**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**CLAUD E. BODDIE, JR. and**
**BEVERLY BODDIE**                                                                                   **PLAINTIFFS**


**V.**                                                                               **NO: 4:16CV209-M-V**

**CEDRIC WALKER, MARY HAYWOOD**
**and STATE FARM INSURANCE COMPANY**                                    **DEFENDANTS**


**<u>ORDER</u>**

This cause comes before the court on its own motion, addressing some of the unexpected events which have transpired in this case in recent days and providing guidance for the parties going forward. This court found it necessary to continue this case on the Friday before the scheduled trial, after it developed concerns regarding whether it had jurisdiction.[1] In continuing the case, this court requested Judge Virden to hold a new pretrial conference, at which she should make inquiries regarding the citizenship of the parties on the relevant dates.

The surprising events in this case have given this court cause to reconsider its approach to the issue of fraudulent misjoinder in uninsured motorist (UM) insurance cases. If it should develop that defendants Cedric Walker and/or Mary Haywood were Mississippi citizens at any time relevant for diversity purposes, then the only way this court could retain jurisdiction over this case would be to find that they were "egregiously" misjoined and accordingly sever and

---

[1] The parties appeared to believe that the date of removal was the only relevant date for determining citizenship, but, as discussed below, the law is clear that, in removed cases, diversity must also have existed at the time suit was originally filed. At the time of the continuance, none of the parties had provided this court with information regarding the citizenship of defendants Walker and Haywood on the relevant dates, eighteen hours after the court had requested it. Considering that the complaint in this case listed Mississippi addresses for both Walker and Haywood, this court was unable to determine that it had jurisdiction over the case, and it accordingly continued the case.

1

remand the claims against them. It would be exceedingly difficult for this court to find that Walker or Haywood were egregiously misjoined, considering that it signed a pretrial order in which no party, including State Farm, had made any objection to their presence as co-defendants at trial.

State Farm originally removed this case based on allegations that Walker and Haywood had been egregiously misjoined, but it dropped these objections after it concluded that they were not Mississippi citizens on the relevant date(s) and that their presence at trial accordingly did not destroy diversity jurisdiction. After this court raised jurisdictional questions shortly before trial, State Farm re-asserted its arguments that the claims against Walker and Haywood should be severed, even though it had made no mention of any such objections in the pretrial order. Obviously, the issue of whether claims against these defendants can fairly be litigated alongside those against State Farm should in no way depend upon their state(s) of citizenship. This court was puzzled by State Farm's sudden change in position and determined to take a hard look at the fraudulent misjoinder doctrine which served as the basis for removing this case. In so doing, this court placed particular emphasis upon UM cases in which judges in this district have accepted the misjoinder arguments of insurers, severed and remanded the claims against the alleged tortfeasors, and thereupon litigated claims solely against the UM carriers to trial.

The result of this court's review is set forth in this order, and it does not, in its view, lend itself to confidence in the misjoinder doctrine, at least in UM cases. As discussed below, this court has previously been receptive to misjoinder arguments made by UM carriers, but it has grown increasingly skeptical of the doctrine's application in this particular context. For the reasons discussed below, this court will, in the future, be very unlikely to find that the joinder of claims against a UM carrier with those against the underlying tortfeasor constitutes "egregious"

misjoinder within the meaning of the fraudulent misjoinder doctrine. This issue is an important one not only in this case, but also in others, and this court will accordingly address it at some length.

Fraudulent misjoinder was first recognized as a ground for diversity jurisdiction by the United States Court of Appeals for the Eleventh Circuit in *Tapscott v. Miss. Dealer Serv. Corp.,* 77 F .3d 1353 (1lth Cir. 1996). In adopting the doctrine, the Eleventh Circuit wrote that:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."

*Tapscott,* 77 F. 3d at 1360, c*iting Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921). In so writing, the Eleventh Circuit took care to emphasize that "[w]e do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." *Tapscott,* 77 F.3d at 1360. Thus, "egregious" was, and has remained, the watchword for determining whether a particular misjoinder was so improper as to constitute fraudulent misjoinder.

For its part, the Fifth Circuit has stopped short of adopting the fraudulent misjoinder doctrine, but it has clearly made favorable references to it. In *In re Benjamin Moore & Co.,* 309 F.3d 296 (5th Cir. 2002), for example, the Fifth Circuit wrote, in considering a case involving "seventeen plaintiffs . . . who have nothing in common with each other," that "it might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." For the most part, however, the Fifth Circuit's jurisprudence regarding fraudulent misjoinder is very sparse, and it has largely been left to Mississippi district courts to define the scope of the doctrine.

Most district courts in this state have read *Benjamin Moore* as an indication that the Fifth Circuit would adopt the fraudulent misjoinder doctrine in an appropriate case, and they have accordingly tended to treat it as a potential ground for jurisdiction. A notable exception is Judge Brown, who recently declined to recognize fraudulent misjoinder as a basis for jurisdiction based on her conclusions that "the removal statute must be strictly construed" and that there is no "clear guidance from the Fifth Circuit or the United States Supreme Court on the application of the fraudulent misjoinder doctrine." *See Wilson v. State Farm Mut. Auto. Ins. Co.*, No. 4:17-cv-124, 2018 WL 1096836, at *2 (N.D. Miss. Feb. 28, 2018). Judge Brown's view is a minority one among district judges in this circuit,[2] but even the district courts which recognize the doctrine have tended to emphasize, as the Eleventh Circuit did in *Tapscott*, that it should only apply in cases of truly egregious misjoinder.

In *Cooper v. AIG Claim Servs., Inc.,* 2009 WL 279101, at *2 (N.D. Miss. Feb. 5, 2009), for example, Judge Aycock wrote that "[f]or this court to accept jurisdiction despite the misjoinder of a non-diverse defendant, the misjoinder must be egregious or grossly improper." Judge Barbour similarly wrote in S*weeney v. Sherwin Williams Co.*, 304 F.Supp.2d 868, 872 (S.D. Miss. 2004) that "[t]o constitute fraudulent misjoinder, the misjoinder must represent totally unsupported, or egregious misjoinder." For its part, this court has likewise written that

> Assuming arguendo that the Fifth Circuit would explicitly adopt the *Tapscott* rationale in an appropriate case, this court would only be able to accept jurisdiction based on the misjoinder of either plaintiffs or defendants if such misjoinder were "egregious." It is thus apparent that, for *Tapscott* to be applicable, this court would be required to find a level of misjoinder that was not only improper, but grossly improper.

---

[2] However, federal courts outside the Fifth and Eleventh Circuits have tended to reject *Tapscott*'s misjoinder doctrine. *See e.g. Palmer v. Davol, Inc.,* 2008 WL 5377991, *2 (D.R.I. Dec. 23, 2008) (discussing cases considering *Tapscott* and concluding that "federal courts … have not given the doctrine a ringing endorsement."). It is thus apparent that Judge Brown's views on this subject may well represent the majority view among district judges nationwide. As discussed below, this court does not reject the misjoinder doctrine in all cases, but it has come to regard its application in UM insurance cases with considerable suspicion.

*Walton v. Tower Loan of Miss.,* 338 F. Supp. 2d 691, 695 (N.D. Miss. 2004).

This court continues to believe that the fraudulent misjoinder doctrine has its place, but it emphasizes once again that it should only be applicable in rather extreme cases of misjoinder. To give one example, if a Mississippi citizen, wishing to avoid federal court, joins his products liability claim against a car manufacturer with a totally unrelated property dispute against his neighbor, then that would clearly seem to be the sort of "egregious" misjoinder that would justify application of the doctrine. In such a hypothetical, there would be no common questions of law or fact between the two claims, and the circumstances of the case would certainly lead one to suspect that the plaintiff was simply trying to defeat federal jurisdiction. In such a situation, this court would have no reservations about finding the fraudulent misjoinder doctrine applicable and severing and remanding the property claim against the non-diverse defendant.

That brings this court to one particular application of the fraudulent misjoinder doctrine regarding which it has developed increasing reservations; namely, in UM insurance cases. Following the Mississippi Supreme Court's decision in *Hegwood v. Williamson*, 949 So.2d 728, 730 (Miss. 2007), it has become increasingly common for UM carriers in this state to use fraudulent misjoinder as a basis for removing cases in which contract and bad faith claims against them are joined with tort claims against the tortfeasor. In *Hegwood*, the Mississippi Supreme Court held that a trial court erred in refusing to sever tort claims against a defendant motorist with breach of contract and bad faith claims against the insurer. In so ruling, the Supreme Court explained that negligence claims against a defendant driver and breach of contract and bad faith claims against an insurer, while arising out of the same accident, "involve different factual issues and different legal issues" and would require different witnesses and proof. *Hegwood*, 949 So.2d at 731.

As discussed below, this court regards the arguments against joinder in UM cases to be misplaced, but the crucial point, for misjoinder purposes, is that it does not regard such joinder as *egregious*. Moreover, it seems clear that equating *Hegwood*'s conclusions about the proper means of handling claims against a tortfeasor and insurer under Miss. R. Civ. P. 20 with a finding of egregious misjoinder under *Tapscott* is erroneous, since the relevant standards are very different. This court is not the first Mississippi district court to reach this conclusion. In *Sampson v. Mississippi Valley Silica Co.,* 268 F. Supp. 3d 918, 923 (S.D. Miss. 2017), for example, Judge Bramlette rejected the application of the fraudulent misjoinder doctrine in the insurance context, writing that "[d]espite [the insurer's] contention that the Mississippi Supreme Court's finding of improper joinder in *Hegwood* necessitates finding misjoinder in this case, the Court finds that *Hegwood* and the other cases cited by the defendant are factually distinguishable from the case *sub judice*." [Sampson, 268 F. Supp. 3d at 925]. This court agrees with Judge Bramlette that *Hegwood* is distinguishable, largely because it addressed what constituted *proper* joinder under Mississippi's Rule 20, not what constituted *egregious* or *non-egregious* joinder under *Tapscott* and its progeny. Clearly, these are two different things.[3]

A UM carrier seeking to argue that it would be "egregious" to join claims against it with those against the tortfeasor must confront the plain language of Miss. Code. Ann. § 83–11–

---

[3] In so stating, this court is aware of language in dicta in the Fifth Circuit's opinion in *Crockett v. R.J. Reynolds Tobacco Co.,* 436 F.3d 529, 533 (5th Cir. 2006) which seems to suggest that fraudulent misjoinder might apply if a particular joinder was simply "improper" under a state's joinder rule. However, *Crockett* interpreted the voluntary-involuntary rule, not the doctrine of misjoinder, and it seems highly unlikely that the Fifth Circuit would hold that defendants are entitled to remove cases on the basis of fraudulent misjoinder when they merely contend that joinder was *incorrect* under state law. Such a holding would open the floodgates to removals of cases from state court, and it has no support from any federal circuit's jurisprudence. Indeed, the Fifth Circuit has not seen fit to clearly adopt *Tapscott* as the law in this circuit at all, and it seems extremely unlikely that it would adopt an iteration of the misjoinder doctrine which went far beyond the Eleventh Circuit's approach in *Tapscott*. In so stating, this court reiterates that, outside the Fifth Circuit, *Tapscott* itself has received a rather lukewarm reception. *See e.g. Palmer,* 2008 WL 5377991, *2. That being the case, the possibility that the Fifth Circuit would go far beyond *Tapscott* seems exceedingly remote.

101(1), which provides that plaintiffs may only recover UM damages if they are "legally entitled to recover as damages for bodily injury or death from the owner or operator of an uninsured motor vehicle." This is a very significant fact in the misjoinder context, since it means that the same negligence factors (i.e. duty, breach, causation and damages) which apply to determine the liability of the alleged tortfeasor are likewise part of a UM action against the insurer.[4] Simply stated, if the plaintiff is not legally entitled to recover from the tortfeasor, then neither may he recover UM benefits against his insurer. *See, e.g. Medders v. U.S. Fid. & Guar. Co.,* 623 So. 2d 979, 989 (Miss. 1993)(limiting UM coverage to cases where "the insured would be entitled at the time of injury to recover through legal action.") That being the case, it is very difficult to argue that a tort claim and associated UM claim do not share common questions of law or fact, since they almost invariably do, as a matter of statute and, as discussed below, simple reality.

This court's evolving views on the fraudulent misjoinder doctrine are also based upon its experience that insurance companies have tended to greatly overstate the factual differences between UM claims and the underlying tort claims. In *Cartwright v. State Farm Mutual Automobile Insurance Co.,* No. 4:14-CV-00057, 2014 WL 6959045 (N.D. Miss. Dec. 8, 2014), for example, State Farm made arguments very similar to the ones it made in this case. As in the typical UM case, the plaintiff in *Cartwright* sued the defendant driver, Valerie Sproull, for negligence, and she also sued her UM carrier State Farm. Id. at *1. In *Cartwright*, Judge Davidson accepted State Farm's argument that Sproull was fraudulently misjoined, finding that, as to her, the "[p]laintiff will be required to present different proof than will be required to support her claims against State Farm." *Id.* at 7. He further wrote that "[a]lthough both sets of claims arguably 'arose' from the subject motor vehicle accident, they implicate distinct factual

---

[4] The Mississippi Supreme Court stated the exact opposite in *Hegwood*, which, as discussed below, leads this court to conclude that it viewed the claims against State Farm in its capacity as liability, not UM, insurer.

7

and legal issues." *Id.* Judge Davidson accordingly severed the plaintiff's claims against Sproull, remanded those claims to state court, and allowed the plaintiff's claims against State Farm to move forward in federal court. *Id.* at 8.

Thus, Judge Davidson in *Cartwright*, like most other district judges in this state, accepted a UM insurer's argument that "[p]laintiff will be required to present different proof than will be required to support her claims against [the insurer]." Id. at *7. In *Cartwright*, the truth proved otherwise. This court has reviewed the docket in *Cartwright*, which proceeded to trial, and the pretrial order makes it clear that the *only* issues at trial involved whether or not the alleged tortfeasor Sproull was negligent, and, if so, the extent of damages suffered by plaintiff. Indeed, State Farm's own description of the disputed issues of fact, in the pretrial order, were as follows:

> 1. Whether Valerie Sproull was negligent, and if so, to what degree.
> 2. The nature and extent of damages suffered by [plaintiff] related to the motor vehicle accident, if any.

[Cartwright pretrial order at 4].

State Farm's description of the disputed issues of law in *Cartwright* were as follows:

> 1. Whether Valerie Sproull was negligent, and if so, to what degree.

[*Id.*] This is in stark contrast to the representations in State Farm's motion to sever and remand, that:

> The claims against State Farm and defendant Sproull are distinct litigable events which do not share common questions of law or fact. Just as the Mississippi Supreme Court concluded in *Hegwood*, Plaintiff's allegations against Defendant Sproull in this case raise "fact issues of how the accident occurred and legal issues of simple negligence (duty, breach of duty, proximate causation, and damages)," while her breach of contract and bad faith allegations against State Farm relate to the handling of her claim "and legal issues of interpretation of insurance policies and bad faith under which an award of punitive damages may or may not be appropriate."

[Cartwright, 4:14-CV-00057, docket entry 10 at *3].

This court is not suggesting that State Farm deliberately misled Judge Davidson in *Cartwright*, but it does find that its representations in that case were, objectively speaking, not accurate. In fairness to State Farm, its representations in *Cartwright* closely tracked the language of *Hegwood*, in particular the Mississippi Supreme Court's observation that:

> While it is true that the genesis of both claims arose out of the accident, the two claims involve different factual issues and different legal issues. The car accident raises fact issues of how the accident occurred and legal issues of simple negligence (duty, breach of duty, proximate causation, and damages). The breach of contract and bad faith claims raise fact issues of what occurred between the two insurance adjusters and how they made their decisions and legal issues of interpretation of insurance policies and bad faith under which an award of punitive damages may or may not be appropriate.

*Hegwood*, 949 So. 2d 731. Thus, State Farm can legitimately argue that it was following *Hegwood*'s language, but the fact remains that, in arguing in *Cartwright* that "[t]he claims against State Farm and defendant Sproull … do not share common questions of law or fact," its words were objectively, and indisputably, false. Factually inaccurate representations in a particular case are not made any more truthful by the fact that they track the language of a published judicial opinion.

This court notes that one potentially confusing aspect of *Hegwood* is that it involved claims against *both* a liability insurer and a UM insurer, each of which happened to be State Farm in that case. *Id.* Accordingly, it may well be that, in writing the above words, the Supreme Court was thinking of the plaintiff's claim against State Farm in its capacity as liability insurer, and not as UM carrier. This court believes that this is likely the case, since § 83–11–101(1)'s "legally entitled to recover" language means that UM cases and associated tort claims generally *do* share common questions of law and fact, as a matter of statute. This court does not regard this as a matter of opinion, but one of simple fact, and the record in *Cartwright*, this case, and many other UM cases bear this out. That being the case, it makes sense to read the Mississippi

9

Supreme Court's words in *Hegwood* in a manner which comports with reality, thus leading this court to believe that the Supreme Court viewed the claims against State Farm in its capacity as liability, not UM, insurer.

Claims against liability insurers and claims against UM carriers have historically been regarded as very different things, with the former being disfavored and the latter being a well-established part of this state's jurisprudence. Indeed, direct actions against liability carriers were outright barred under Mississippi law until a limited right to maintain declaratory judgment actions against them was established through an amendment to Miss. R. Civ. P. 57. *See Poindexter v. S. United Fire Ins. Co.,* 838 So. 2d 964, 967 (Miss. 2003). Rule 57(b)(2) provides that:

> (2) A contract may be construed either before or after there has been a breach thereof. Where an insurer has denied or indicated that it may deny that a contract covers a party's claim against an insured, that party may seek a declaratory judgment construing the contract to cover the claim.

Thus, the purpose of Rule 57 declaratory actions against liability insurers is to "construe the contract to cover the claim," which is consistent with the Supreme Court's language in *Hegwood*. This language buttresses this court's view that the Supreme Court intended to refer to State Farm in its capacity as a liability, not UM, insurer. This distinction between liability and UM insurers is understandable, considering that, when a plaintiff sues his UM carrier, he is suing a company with which he had a contract and to which he paid premiums. By contrast, when a plaintiff sues someone else's liability insurer, he is suing a company with which he had no such relationship, and the argument for bringing claims against such an insurer is much more tenuous.

Given that State Farm was sued in its capacity as both UM and liability carrier in *Hegwood*, there is no way of knowing whether the Mississippi Supreme Court would have reached the same decision had it been confronted by claims against it solely in its capacity as

UM carrier. This court therefore believes that caution is in order before reading the decision too broadly. Regardless of what the Mississippi Supreme Court had in mind in writing the above words in *Hegwood*, the simple fact of the matter is that claims against UM carriers and tortfeasors will generally share issues of law and fact, as explained above. In this case, for example, this court is confident that the proof at trial, jury instructions and form of the verdict would all relate to issues such as Walker's negligence, plaintiff's contributory negligence, and damages, even if it proceeded in federal court against State Farm alone. In other words, the exact same issues that a jury would consider in a case where Walker was the sole defendant.[5] This is no different than in *Cartwright*, where, once again, the disputed issues of law and fact related solely to the negligence of the defendant Sproull and the plaintiff's damages.

In light of the foregoing, this court wonders what public policy considerations are served by having parallel actions in federal and state court, merely to decide the exact same negligence issues. Indeed, given that federal courts in this state are well known to litigate cases with greater speed than state courts, it seems likely to this court that the results of the remanded state court action would, in most cases, be mooted by the federal court reaching a verdict first. This court presumes that the federal court verdict would have preclusive effect in state court, but, even if it did not, the fact that the plaintiff is unable to recover from his UM carrier would likely moot the issue of the tortfeasor's liability. Indeed, plaintiffs need UM coverage precisely because the tortfeasor has insufficient coverage, and the practical effect of the sever and remand procedure seems to be to deny the plaintiff the right he would ordinarily have to assert claims against a non-diverse tortfeasor in state court. This court strongly doubts that this was the Mississippi Supreme Court's intent in *Hegwood*.

---

[5] This court has bifurcated the issue of punitive damages in this case, and the bad faith issues will thus only become available if plaintiff prevails on the issue of compensatory damages and makes the strong showing required by Miss. Code Ann. § 11-1-65.

The record in *Cartwright* also illustrates the fallacy of another oft-repeated argument raised by UM insurers, namely that the "benefit" justifying having two parallel actions in state and federal court is that it keeps the jury from learning of the existence of insurance. Indeed, in justifying State Farm's requesting a severance the Friday before trial, counsel argued to this court that "[p]rincipally, it cures the question of whether the jury should be permitted to hear that underinsured motorist coverage is at issue." This argument is hardly unique to State Farm. Indeed, the Supreme Court in *Hegwood* wrote that the "most important" factor justifying its decision was that "Hegwood would be prejudiced if the jury learned of her insurance coverage while it was deciding liability and damages." *Hegwood*, 949 So. 2d 731. The comments to Rule 57 include similar language. This argument only makes sense as to liability insurance, however, since a UM carrier is the *named defendant* in the action which is removed to federal court. Indeed, the jury's verdict in *Cartwright* reads simply that:

"We, the jury, find for the defendant, State Farm Automobile Insurance Company." [*Cartwright*, docket entry 88.]

It is worth considering the implications of this simple verdict form, since it speaks to the fallacy of the misjoinder/severance argument in UM cases. At this moment, there are numerous car crash cases being litigated concurrently in state and federal court in Mississippi, thereby wasting an enormous amount of judicial resources. The supposed "benefit" justifying this inefficiency is that it keeps the jury from learning of the existence of insurance. Meanwhile, given the speedier federal dockets, the lawsuit which actually decides liability will generally be the federal one, in which an insurance company will be the *named defendant*.[6] If this court were

---

[6] Additionally, concerns about the jury learning of the existence of insurance strike this court as being something of an anachronism, at least in car accident cases. Indeed, Mississippi law now *requires* drivers to carry liability insurance. That being the case, this court believes that juries assume that a least one driver in an accident will carry insurance, even if they are not explicitly told such.

12

to acquiesce in this practice, it risks a Kafkaesque absurdity. Indeed, as best this court can tell, none of the reasons given by UM carriers in justification of severance withstand logical scrutiny, and they strike it as being quite disingenuous.[7]

This court notes that *Cartwright* proved to be an influential decision, and it has been cited by district judges throughout the state in support of rulings severing and remanding claims against alleged tortfeasors in UM cases. *See, e.g. Cherry v. Stallworth*, No. 1:17CV219-HSO-JCG, 2017 WL 3868220, at *1 (S.D. Miss. Sept. 5, 2017)(Judge Ozerden, finding "the reasoning in *Cartwright* persuasive here."), *Herbert v. White*, No. 1:17CV228-LG-RHW, 2017 WL 4167518, at *1 (S.D. Miss. Sept. 20, 2017)(Judge Guirola); *Hampton v. Frost*, No. 3:15-CV-576-CWR-FKB, 2015 WL 11233043, at *2 (S.D. Miss. Sept. 24, 2015)(Judge Reeves); *Jones v. Darby*, No. 1:14-CV-00163-SA-DAS, 2015 WL 4496407, at *3 (N.D. Miss. July 23, 2015)(Judge Aycock); *JCKP, LLC v. Berkley Reg'l Specialty Ins. Co.,* No. 2:14CV117-KS-MTP, 2015 WL 13448015, at *2 (S.D. Miss. Jan. 30, 2015)(Judge Starrett).

This court has itself relied upon *Cartwright*, and nearly identical representations from State Farm, in severing and remanding claims against a tortfeasor in a UM case. In *Grattafiori v. Thompson*, No. 4:16-CV-0004-MPM-RP, 2016 WL 9496657, at *4 (N.D. Miss. Dec. 1, 2016), for example, State Farm argued in its motion to sever, as it did in *Cartwright*, that:

> In this case, the claims against State Farm and Thompson arise from distinct litigable events which do not share common questions of law or fact. Just as the Mississippi Supreme Court concluded in *Hegwood*, the allegations against Thompson raise "fact issues of how the accident occurred and legal issues of simple negligence (duty, breach of duty, proximate causation, and damages)," while his breach of contract and bad faith allegations against State Farm relate to the handling of a claim "and legal issues of

---

[7] The same applies to UM insurers who seek to convince a state court judge to sever them from a tort lawsuit, so that they may remove it to federal court under the Fifth Circuit's decision in *Crockett.* In that situation, the insurance company would be seeking to have its liability determined by a federal jury, in a case in which it would be the named defendant. That being the case, any argument that the insurer is seeking to avoid having the jury learn of the existence of insurance seems entirely disingenuous.

interpretation of insurance policies and bad faith under which an award of punitive damages may or may not be appropriate." Id. at 731.

[*Grattafiori*, docket entry 13 at *3].

This court accepted State Farm's argument in *Grattafiori*, writing that:

Grattafiori's claims against Thompson are based solely upon Thompson's negligence in causing the action while his claims against State Farm are based solely upon State Farm's conduct in dealing with Grattafiori's insurance claim. … His claims against Thompson solely involve the events giving rise to the accident while his claims against State Farm only concern whether the company acted in bad faith by failing to engage in more extensive investigations of his insurance claim and demanding that it be sued before making a payment to Grattafiori.

*Grattafiori*, 2016 WL 9496657, at *3. Thus, like Judge Davidson in *Cartwright*, this court accepted State Farm's representations regarding the eventual proof at trial at face value, but, as in Judge Davidson's case, the actual truth proved very different. *Grattafiori*, like *Cartwright*, went to trial, and the pretrial order indicates that the disputed issues of fact in the case included:

1. Whether Thompson was at fault and, if so, to what degree.
2. Whether Grattafiori was at fault and, if so, to what degree.
3. The nature and extent of any damages suffered by Grattafiori as a result of the accident.

[Pretrial order at 3].

*Grattafiori* is different from *Cartwright* in one respect, namely that the bad faith claims against State Farm were, in fact, listed as potential issues in the pretrial order. [*Id.*] However, the jury's verdict makes clear that the issue of punitive damages did not actually go before it, and its verdict related solely to the issue of Thompson (and the plaintiff's) negligence and damages.[8] The form of the verdict asked the jury to make no findings regarding State Farm's coverage practices and/or punitive damages, and the only issues which it resolved in that case were the same ones it would have addressed in a claim against Thompson alone. [*Grattafiori*, docket

---

[8] The jury in Grattafiori assigned 85% fault to Thompson and 15% fault to the plaintiff, and it assessed his damages in the amount of $15,000. [Grattafiori, docket entry 55].

entry 55]. The jury instructions similarly dealt solely with issues such as negligence and compensatory damages, just as they would have in a case filed against Thompson alone. [*Grattafiori*, docket entry 54]. Thus, State Farm's representation that the claims against itself and Thompson would "not share common questions of law or fact," was simply false, as it was in *Cartwright,* and in this case as well.

If this court had known in *Grattafiori* that the jury would only decide the issues of Thompson's liability and plaintiff's damages, then it would have simply remanded the entire case to state court rather than have the same issues litigated in federal and state court. This court regards the result in *Grattafiori* as being judicially inefficient in the extreme, and, that aside, it served to deprive the plaintiff of the right he would ordinarily have to sue another Mississippian in state court regarding a simple automobile accident. The plaintiffs in *Cartwright* and *Grattafiori* appear to have effectively lost that right, for no other reason than they had UM coverage with an insurer determined to have liability determined in federal court. On reflection, this court should have read State Farm's representations with a more skeptical eye, given § 83-11-101's "legally entitled to recover" language. Nevertheless, State Farm's arguments were, as noted above, supported by a strong majority of Mississippi district court judges, and this court therefore ruled on the assumption that (with apologies to Emerson) the hobgoblin consistency had some relation to truth. As Kafka says, "[f]rom a certain point onward there is no longer any turning back. That is the point that must be reached."[9] This court has concluded that it may have previously erred and that it must, now, turn back, before reaching another improvident result.

That brings this court to the instant case, which is rather unique in that State Farm essentially abandoned its misjoinder arguments in the middle of litigation when it thought it did not need them anymore and returned to them right before trial, when this court suggested that it

---
[9] Franz Kafka, "The Trial."

might, in fact, need them. The complaint and removal petition in this case both stated that plaintiff Boddie and defendants Walker and Haywood were Mississippi "resident citizens," and State Farm accordingly filed a removal petition in which it made arguments virtually identical to those in *Grattafiori* and *Cartwright*.[10] [Removal petition at 5]. As in other misjoinder cases, the removal petition represented that it would constitute "egregious" misjoinder to try the claims against Walker and State Farm in the same action and that, accordingly, the claims against Walker should be severed and remanded to state court. Unlike in *Grattafiori* and *Cartwright,* State Farm never actually filed a motion to sever in this case, since all parties concluded at some point in the litigation that Walker was a Tennessee citizen and that, as such, diversity of citizenship existed even with him as a defendant. Believing that it no longer needed Walker's dismissal on a finding of misjoinder, State Farm dropped any objections to his remaining as a co-defendant, and it made no objection in the pretrial order to his being a co-defendant at trial.

While the issue of jurisdiction thus appeared to have been resolved, it resurfaced as an issue shortly before the scheduled trial. On the Thursday before trial, this court (through its law clerk), inquired of the parties whether diversity jurisdiction actually existed in this case, noting that the removal petition in this case stated otherwise. In response, the parties all represented that (contrary to the removal petition) Walker was a Tennessee citizen at the time of removal. In reply, this court inquired whether Walker was also a Tennessee citizen at the time the complaint was filed, since it is "well settled that a removing party must allege diversity both at the time of the filing of the suit in state court and at the time of removal." *In re Allstate Ins. Co.,* 8 F.3d 219, 221 (5th Cir. 1993). This court regards this as a reasonable question, since the

---

[10] For the sake of simplicity, this court will simply refer to "Walker" as the defendant whose citizenship is in question, but any references to "Walker" in this order should be understood to include Haywood as well.

16

complaint in this case lists a specific address in Jackson as Walker's residence, and it also lists Haywood as a "resident citizen" of Mound Bayou, Mississippi. [Complaint at 2].

Having received no clarification regarding this issue by 10 a.m. the next day, this court, after a phone conference with Judge Virden, found it necessary to issue an order of continuance, writing that:

> Following consultation with Magistrate Judge Virden regarding jurisdictional concerns which have arisen in this case, including new positions taken by defendant State Farm regarding the issue of misjoinder, this court has determined that the trial in this matter must be continued until a date to be determined later. It appears, based upon representation from counsel, that the entry of a new pretrial order will be necessary in this case, and this court requests that Judge Virden work with the parties to prepare such an order.

[Order of continuance at 1]. This court's decision to continue the case was also based upon State Farm's surprising revelation that same morning, in an e-mail, that it was, in fact, seeking to have the claims against Walker severed and tried separately. This court was unsure of the implications of this sudden change in State Farm's position, and it directed the Magistrate Judge to inquire into this issue at a new pretrial conference.

That brings this court to the instant order. Having had an opportunity to achieve some mastery over the shifting law and slippery facts evolving in this case, this court will provide some clarification regarding the nature of the new pretrial conference which it requested Judge Virden to hold. First, it seems clear to this court that State Farm will need to offer Judge Virden a very good reason for its new position regarding Walker's presence as a co-defendant at trial. Pretrial conferences are held for a reason, and litigants are not allowed to simply change their minds the final work day before trial regarding how a case is best litigated. Thus, this court presumes that Judge Virden will not allow State Farm to change its position on this issue absent a clear showing that it is necessary. This court notes that State Farm cited the Mississippi

17

Supreme Court's decision in *Hegwood* in support of its new position, but, as noted previously, *Hegwood* applied Mississippi's Rule 20, not the Federal Rule 20. While Mississippi's Rule 20 is relevant in the fraudulent misjoinder context, the question of Walker's status at trial pre-supposes that this court has jurisdiction over the claims against him. That being the case, this court presumes that Walker's status at trial would depend on the Federal Rules of Civil Procedure, although it is open to being persuaded otherwise. *See Hanna v. Plumer*, 380 U.S. 460 (1965)(holding that the Federal Rules of Civil Procedure apply in diversity cases in federal court.)

With regard to the issue of jurisdiction, this court requests that Judge Virden ascertain the true facts regarding the citizenship of plaintiff, Walker and Haywood at all times relevant to diversity jurisdiction. This court understands that the parties represented in the pretrial order that diversity existed at all relevant dates, but, in so doing, they appeared to be operating under the mistaken belief that the time of removal was the sole relevant one for purposes of determining diversity. As discussed previously, however, diversity must also have existed when suit was originally filed, and no party has responded to this court's request for clarification on this issue, even as of the writing of this order several days later.[11] If the facts should indicate that diversity existed at all relevant times, then this court will set the case for retrial, and it is presently inclined for that retrial to include Walker as a defendant, just as State Farm agreed to in the pretrial order.

In the event that diversity is shown to have been lacking on either of the relevant dates, then this court will almost certainly remand this entire case to state court, rather than sever and

---

[11] Moreover, no party has filed a motion to amend the removal petition which, even today, still asserts that diversity of citizenship is lacking in this case. It appears that such a motion to amend may be necessary, notwithstanding the pretrial order, considering that litigants in other cases have found it necessary to file such motions to amend even at the appellate level. *See D.J. McDuffie, Inc. v. Old Reliable Fire Insurance Co.,* 608 F.2d 145 (5th Cir. 1979); *Firemen's Insurance Company of Newark, N.J. v. Robbins Coal Company, Inc.,* 288 F.2d 349 (5th Cir. 1961). This suggests that this issue is one which is not easily waived.

remand the claims against Walker.[12] For the reasons discussed previously, this court has come to view the doctrine of fraudulent misjoinder with considerable suspicion in UM insurance cases, and it does not regard the joinder of the claims against Walker with the claims against State Farm as presenting a case of "egregious" joinder. While *Hegwood* arguably suggests that such joinder is *improper* under Mississippi law, federal judges in this state have repeatedly held that joinder must be *egregious* to support a finding of fraudulent misjoinder.

It seems clear to this court that, if State Farm genuinely believed that trying the claims against Walker and itself together was "egregious," then it would not have agreed to such in the pretrial order when it appeared that federal jurisdiction existed. State Farm's sudden return to its prior stance in favor of severance has all the hallmarks of being one of convenience, since it raised no objections on this issue until jurisdiction re-surfaced as an issue. This court certainly understands that parties and their counsel are entitled to vigorously argue in favor of their positions, and it does not fault them for doing so. At the same time, this court has an obligation to consider whether UM insurers' misjoinder arguments reflect actual reality, and, its experience has been that, very often, they do not.

In so stating, this court acknowledges that, in making these arguments, UM insurers are able to rely upon a very substantial amount of precedent from state and federal courts. It strikes this court that, if the Mississippi Supreme Court and enough federal courts (including this one) repeat a particular assertion enough times, it comes to be seen as nearly incontrovertible. So it is

---

[12] This court realizes that plaintiffs may regard starting over in state court as an unwelcome development, but federal courts may not retain jurisdiction by consent. If diversity is lacking, then the only way for this court to retain jurisdiction would be upon a legal finding that "egregious" misjoinder is present under *Tapscott*. There is no way that this court could, in good faith, make such a finding in this case, particularly since State Farm itself was only too willing to accept Walker as a co-defendant when it appeared that his presence would not destroy diversity. Indeed, the fact that this court signed the pretrial order makes clear that it does not regard Walker's joinder as improper, much less egregious. Any trial in this case will assess Walker's degree of fault in the accident, and, that being the case, there is no way this court could find his presence as a defendant at trial to be "egregious."

with the oft-repeated statement that UM claims do not share questions of law or fact with the underlying tort claim. This court itself repeated this assertion in *Grattafiori*, but it has come to realize that it is simply not true. Indeed, *Cartwright* and *Grattafiori* were litigated against State Farm alone in federal court, based upon its representation that the claims against it would not "share common questions of law or fact" with those against the tortfeasor. In actual reality, the ultimate issues decided by the juries in those cases not only shared common issues of law and fact with those against the tortfeasor; they were literally identical. It seems likely that this case would have been no different, had it proceeded in federal court against State Farm alone.

Taking account of its experiences, this court would no longer reach the same ruling as it did in *Grattafiori*, and it will very likely remand future UM cases which are removed on the basis of fraudulent misjoinder. This court has written this order to explain its reasons for changing its position in this regard and to provide guidance for Judge Virden in conducting her inquiry into the jurisdictional issues in this case.

So ordered, this the 15th day of May, 2018.

/s/ Michael P. Mills  
U.S. DISTRICT COURT  
NORTHERN DISTRICT OF MISSISSIPPI